UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ANNA LOU TARTER SMITH et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 17-334-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JOSHUA DONALD TARTER, et al., | ) | **MEMORANDUM ORDER** |
| | ) | **AND OPINION** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This is a commercial action brought by Plaintiffs Anna Lou Tarter Smith ("Smith"),

Lou Ann Coffey ("Coffey"), and Douglas Tarter, in their individual capacities and in their

derivative capacities on behalf of the Tarter Companies.[1] [Record No. 1]  The plaintiffs allege

that Defendants Joshua Donald Tarter ("Joshua Tarter"), Thomas Gregory ("Gregory"), and

QMC Industry Company, Ltd. ("QMC"), conspired to use sensitive company information to

divert cost savings from the Tarter Companies to their own benefit in violation of the Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d), the Defend

Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, the Kentucky Uniform Trade Secrets

Act ("KUTSA"), KRS § 365.880 *et seq.*, and Kentucky common law.  [Record No. 1, ¶¶ 136-

239]  Defendants Joshua Tarter and Gregory have moved to dismiss under Federal Rule of

Civil Procedure 12(b)(1), asserting that the plaintiffs lack standing to bring these claims in

---

[1] The "Tarter Companies" are comprised of six entities: Tarter Industries, Tarter Management
Company, Inc., and Green River Gate, Inc. (the "Tarter Corporations"), and Tarter Gate
Company, LLC, Tarter Tube, LLC, and Liberty Tank, LLC (the "Tarter LLCs").

their individual or derivative capacities, and under Federal Rule of Civil Procedure 12(b)(6), on the basis that the plaintiffs have failed to state a claim under the RICO Act or the DTSA, and because the plaintiffs' remaining claims are either inadequately pled or should be dismissed for lack of jurisdiction.[2]  [Record Nos. 8, 10]  For the reasons that follow, the defendants' motions will be granted.

## I.

The Tarter Companies are Kentucky companies with their principal place of business in Casey County, Kentucky.  [Record No. 1, ¶ 4]  They bill themselves as "the largest manufacturer of farm gates and animal management equipment in North America."  [*Id.* ¶ 12] The Tarter Companies have been family-owned since 1945, and are now managed by the fourth generation.  [*Id.* ¶¶ 12, 17]  Plaintiff Smith and her children, Plaintiffs Coffey and Douglas Tarter, own 50% of the Tarter companies, while the remaining 50% belongs to Joshua Tarter and his two siblings, each of whom owns a one-sixth share.  [*Id.* ¶ 17]

Joshua Tarter is a shareholder of the Tarter Corporations and a member and manager of the Tarter LLCs.  [*Id.* ¶ 19]  He has exercised executive authority on behalf of all of the Tarter Companies, and has variously held himself out as President, Vice-President, Officer, and Senior Executive of the Tarter Companies.  [*Id.* ¶ 20]  Gregory was a management employee of Tarter Gate Company, LLC, who oversaw engineering and quality, and held

---

[2] Gregory's motion to dismiss was not filed timely.  [Record No. 7]  However, the plaintiffs do not object to the Court considering Gregory's motion and have responded to his arguments. [Record Nos. 6, 14]  Gregory's arguments are nearly identical to Joshua Tarter's arguments, and the Court finds that considering the motion would further the interests of justice, reduce the cost of this litigation, and promote responsible case management. *See Iron Workers Dist. Council of So. Ohio & Vicinity Annuity Trust v. Larry N. Carlin, Inc.*, 3: 17-cv-165, 2017 WL 5054740 (S.D. Ohio, Oct. 17, 2017) (Ovington, M.J.), report and recommendation adopted, 3: 17-cv-165, 2017 WL 5005728 (Rose, D.J.).

himself out as Vice-President or General Manager of the Tarter Companies. [*Id.* ¶¶ 26, 30]

The plaintiffs claim that, because of their senior positions, Joshua Tarter and Gregory were in

a position to control the vendors selected by the Tarter Companies, as well as the prices paid

to those vendors, and that they had access to confidential and proprietary information,

including marketing and business strategies, financial data, pricing, costs, profit margins, order

information, and customer relationships. [*Id.* ¶¶ 21, 22, 28, 29, 33, 77]

The Tarter Companies began to source components for use in their finished products

from Chinese suppliers in 2009. They engaged Xiaofeng Chen to act as their agent in China.

[*Id.* ¶¶ 34-35] Utilizing Chinese suppliers should have enabled the Tarter Companies to save

substantial costs. [*Id.* ¶ 36] However, the plaintiffs allege that, in 2010, Joshua Tarter,

Gregory, and Chen devised a plan to funnel these potential savings to themselves. [*Id.* ¶¶ 37,

40, 52, 58, 73] To accomplish this scheme, they formed Defendant QMC, which the plaintiffs

characterize as a pass-through entity which manufactures nothing. [*Id.* ¶¶ 38, 58]

According to the plaintiffs, Joshua Tarter and Gregory used their authority to ensure

that the Tarter Companies ordered the components from QMC rather than other suppliers. [*Id.*

¶¶ 22, 29, 77, 90] QMC would forward the orders to suppliers in mainland China, who would

manufacture the components and ship them directly to the Tarter Companies. [*Id.* ¶¶ 38-39]

The mainland suppliers would bill QMC for the true cost of the components, but QMC would

substantially inflate the price and invoice the Tarter companies for the higher amount, thus

absorbing the cost savings that the Tarter Companies would have received if they had

purchased directly from the mainland suppliers. [*Id.* ¶¶ 40, 53-56, 62, 75-76] The plaintiffs

allege that Joshua Tarter and Gregory used their knowledge of the prices the Tarter Companies

paid for the components, the price quotations the Tarter Companies received from other

potential suppliers, and the Tarter Companies' profit margins, to determine how much to inflate the price that QMC charged the Tarter Companies. [*Id.* ¶ 41] In total, the Tarter Companies paid QMC approximately $70,053,226.58, *via* wire transfer, over a seven year period for the component parts. [*Id.* ¶¶ 44, 63-72]

The plaintiffs assert that Joshua Tarter and Gregory used their positions within the Tarter Companies to further this scheme in a variety of ways. Most basically, they reduced the costs associated with QMC by misappropriating the Tarter Companies' resources, including by using the Tarter Companies' facilities and personnel for QMC business, and using the Tarter Companies' funds to pay for QMC expenses. [*Id.* ¶¶ 45, 83-84, 103, 135] They also allegedly used their positions within the Tarter Companies to ensure that QMC received more favorable treatment than other suppliers. [*Id.* ¶ 93] For example, the Tarter Companies typically paid QMC 50% of its price in advance, although other suppliers did not receive such a down payment. [*Id.* ¶¶ 42, 122] Additionally, the Tarter Companies would not seek bids from other potential suppliers when a component was sourced by QMC, corrupting the competitive bid process. [*Id.* ¶¶ 94, 96, 119, 123] Finally, the Tarter Companies would allegedly accept defective products supplied by QMC, in contravention of their standard practice, thus shifting a loss that should have fallen on QMC to the Tarter Companies. [*Id.* ¶¶ 95-96, 105, 135]

According to the plaintiffs, Joshua Tarter, Gregory, and Chen realized that secrecy was essential for their plan to succeed. [*Id.* ¶¶ 57, 109, 130] The plaintiffs allege that, as a result, neither Joshua Tarter nor Gregory disclosed their interest in QMC to the Tarter Companies, despite their fiduciary duties to do so. [*Id.* ¶¶ 49, 59-60, 101-07, 113] Further, Joshua Tarter allegedly misrepresented his ownership interest in QMC to the plaintiffs and the Tarter

Companies on multiple occasions. [*Id.* ¶¶ 46-48, 77, 97-100] Nonetheless, after "considerable investigation," the plaintiffs discovered Joshua Tarter and Gregory's ownership interests in QMC in 2016, and confronted Joshua Tarter in meetings with him and his siblings. [*Id.* ¶¶ 109, 110-12] Joshua Tarter allegedly declined to attend further meetings, did not fully disclose his relationship with QMC, and refused to disgorge the profits he made from QMC and turn them over to the Tarter Companies. [*Id.* ¶¶ 115-17] Gregory resigned from his position on September 14, 2016, after being confronted for his allegedly improper behavior. [*Id.* ¶ 114]

The plaintiffs filed this action on August 11, 2017, alleging that Joshua Tarter, Gregory, and QMC conspired to and did violate RICO, DTSA, and KUTSA, and that they perpetrated a fraud by concealment and/or omission and unjustly enriched themselves.[3] [*Id.* ¶¶ 136-46, 147-51, 152-66, 174-81, 182-95, 203-10, 228-31, 237-39] The plaintiffs also claim that Joshua Tarter and Gregory breached their fiduciary duties to the Tarter Companies and usurped a corporate opportunity [*id.* ¶¶ 211-16, 232-36],[4] that Gregory and QMC aided and abetted Joshua Tarter's violations of DTSA and KUTSA and his breach of fiduciary duty [*id.* ¶¶ 167-173, 196-202, 217-23],[5] and that Joshua Tarter made fraudulent misrepresentations.[6] [*Id.* ¶¶ 224-27]

Defendants Joshua Tarter and Gregory have moved to dismiss for lack of standing and for failure to state a claim. [Record Nos. 8, 10] They argue, in relevant part, that the plaintiffs

---

[3] Counts I, II, III, V, VI, VIII, XII, and XIV.

[4] Counts IX and XIII.

[5] Counts IV, VII, and X.

[6] Count XI.

lack standing to bring these claims in their individual capacities because the only alleged injury was suffered by the Tarter Companies and not the plaintiffs personally, and that the plaintiffs lack standing to bring these claims in their derivative capacities because they failed to adequately plead that they made a demand on the Tarter Companies to bring this action, or that making such a demand would have been futile. [Record Nos. 8, 10]

## II.

The defendants' argument that the plaintiffs lack of standing to bring this action contests this Court's subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (citations omitted). A 12(b)(1) motion "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A facial challenge to the Court's subject matter jurisdiction, such as the defendants' challenge here, "merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* "[T]he party claiming jurisdiction bears the burden of demonstrating that the court has jurisdiction over the subject matter." *Id.* at 324.

The defendants' argument that the plaintiffs have failed to state a claim contests the sufficiency of the Complaint under Federal Rule of Civil Procedure 12(b)(6). A 12(b)(6) motion requires the Court to determine whether the Complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the Complaint need not contain "detailed factual allegations" to survive dismissal, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

**III.**

The plaintiffs bring this action in individual and derivative capacities. However, they have not alleged that they sustained any personal injuries apart from the costs and loss of cost savings allegedly incurred by the Tarter Companies. [*See* Record No. 1, ¶ 135 (asserting that the plaintiffs "incurred millions of dollars of damages in the form of excessive charges and cost savings that belonged to the Tarter Companies, as well as the cost of purchasing defective or substandard products from QMC . . . [and] the diversion of their personnel and other facilities and resources to support QMC's business."); *see also id.* ¶¶ 145, 150, 164, 172-73, 180-81, 195, 201-02, 209-10, 215-16, 222-23, 227, 231, 236, 239.] The defendants argue that, because the plaintiffs have failed allege any injury distinct from that sustained by the Tarter Companies, they lack standing to sue in their individual capacities. [Record No. 8, p. 7; Record No. 10, p. 15]

It is a "general precept of corporate law that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation." *Gaff v. Fed. Deposit Ins. Corp.*, 814 F.2d 311, 315 (1987). Although there is a well-recognized exception to this rule when "the shareholder suffers an injury separate and distinct from that suffered by other shareholders, or the corporation as an entity," *id.* (internal quotation marks and citation omitted), the United States Court of Appeals for the Sixth Circuit has "conclusively adopted the general rule that a shareholder does not have standing to bring a direct cause of action under federal law when the only damage alleged is the diminution in the value of corporate shares." *Id.* at 317 (citing *Warren v. Mfrs. Nat. Bank of Detroit*, 759 F.2d 542, 544 (6th Cir. 1985)). Similarly, Kentucky courts have held that "[a] shareholder's rights are merely derivative unless he can show violation of a duty owed directly to him. Depreciation in value of shareholder's corporate stock is generally not the type of direct personal injury necessary to sustain a direct cause of action." *Sahni v. Hock*, 369 S.W.3d 39, 47 (Ky. App. 2010) (quoting *NBD Bank v. Fulner*, 109 F.3d 299, 301 (6th Cir. 1997)). "The reasoning behind this rule is that a diminution in the value of corporate stock resulting from some depletion of or injury to corporate assets is a direct injury only to the corporation; it is merely an indirect or incidental injury to an individual shareholder." *Gaff*, 814 F.2d at 315.

The plaintiffs have not plausibly alleged that they sustained any injury as shareholders of the Tarter Corporations that is not indirect or incidental to the Tarter Corporations' expenditure of costs and loss of cost savings. As a result, they lack standing to bring an individual capacity action to redress those injuries. However, the plaintiffs assert that they nonetheless have standing to sue Joshua Tarter in their individual capacities because they are members of the Tarter LLCs, Joshua Tarter is manager of the Tarter LLCs, and "members of

an LLC may bring an action both derivatively and in their individual capacities against company managers." [Record No. 1, ¶¶ 1-3, 19; Record No. 14, p. 11] In support, they cite *Griffin v. Jones*, 170 F. Supp. 3d 956 (W.D. Ky. 2016), and *Patmon v. Hobbs*, 280 S.W.3d 589 (Ky. App. 2009).

*Griffin* and *Patmon* establish that, under Kentucky law, a managing member of a limited liability company ("LLC") owes fiduciary duties both to the LLC and to its individual members. *Griffin*, 170 F. Supp. 3d at 965; *Patmon*, 280 S.W.3d at 595. However, these cases do not address whether individual LLC members have standing to sue a managing member when their only alleged injuries are derivative of injuries sustained by the LLC.

The courts that have considered that question have concluded that LLC members, like corporate shareholders, lack standing to sue in their individual capacities when they have not suffered any injury that is separate and distinct from the injury to the LLC or its other members. *Pixler v. Huff*, 3: 11-cv-207, 2012 WL 3109492 (W.D. Ky. July 31, 2012) ("Kentucky courts are likely to apply the [direct injury rule] to claims made in the LLC context. Therefore, Plaintiff may maintain her claims against the Defendants only where she has suffered an injury that is separate and distinct from that which would be suffered by other members or the LLC as an entity."); *see also Wells Fargo Fin. Leasing v. Griffin*, 5: 13-cv-75, 2014 WL 241778, *7 (W.D. Ky. Jan. 22, 2014) (finding that when an LLC member's injury is merely derivative of an injury to the LLC, the LLC is the "real party in interest" under Federal Rule of Civil Procedure 17, and the LLC member lacks standing to bring an individual capacity action). *See also* KRS § 275.337(1) ("A member may maintain a direct action against a limited liability company, another member, or a manager to redress an injury sustained by, or to enforce a duty owed to, the member *if the member can prevail without showing an injury or breach of duty*

*to the company*.") (emphasis added).  The Court agrees with its sister court in the Western

District of Kentucky this rule should apply to both corporate shareholders and LLC members.

The plaintiffs have not plausibly alleged that they sustained any injury as members of

the Tarter LLCs that is not indirect or incidental to the Tarter LLCs' expenditure of costs and

loss of cost savings.  As a result, they lack standing to bring an individual capacity action to

redress those injuries.  Accordingly, the plaintiffs lack standing to maintain an individual

capacity action either as shareholders of the Tarter Corporations or as members of the Tarter

LLCs, and their individual capacity claims will be dismissed.

**IV.**

The plaintiffs also purport to bring this action in their derivative capacities on behalf of

the Tarter Companies.  Federal Rule of Civil Procedure 23.1 provides for heightened pleading

standards when a shareholder or member seeks to bring such an action on a company's behalf.

As relevant here, the plaintiff must "state with particularity" any effort made to prod the entity

into bringing the action on its own behalf, and any reason the plaintiff failed to make such an

effort or the effort was unsuccessful.  Fed. R. Civ. P. 23.1(b)(3).  Kentucky law similarly

provides that a shareholder or member seeking to bring a derivative action must plead with

particularity that they made a demand on the company to bring the action on its own behalf,

or that making such a demand would be futile.  KRS 271B.7-400 (for corporations); KRS

275.337(2) (for LLCs).  Kentucky law governs the demand and futility requirements to bring

a derivative action on behalf of a Kentucky company.  *See McCall v. Scott*, 229 F.3d 808, 815

(6th Cir. 2001) (citing *Kamen v. Kemper Fin. Servs. Inc.*, 500 U.S. 90, 96-97 (1991).

The term "demand" means a "demand to commence legal action."  *See Sahni*, 369

S.W.3d at 45 (construing KRS 271B.7-400); KRS 275.337(2) (providing that the demand must

request that the relevant decision-makers "cause the company to bring an action to redress the injury or enforce the right"). A demand for the production of certain information or an investigation into the plaintiff's allegations, unaccompanied by a demand to commence legal action, is insufficient to satisfy this requirement. *Sahni*, 369 S.W.3d at 46. Here, the plaintiffs allege that they demanded that Joshua Tarter fully disclose his relationship with QMC and return all profits of QMC to the Tarter Companies on multiple occasions, and did so in the presence of the other owners of the Tarter Companies on at least one occasion. [Record No. 1, ¶¶ 46-47, 97, 116-17] But because these requests were not demands to commence legal action, they fail to satisfy the pre-suit demand requirement under Kentucky law.

However, the plaintiffs may nonetheless bring a derivative action if they allege with particularity that making such a demand would have been futile. *Sahni*, 369 S.W.3d at 46.[7] The Complaint alleges that "[d]ue to ownership percentages" the owners of the Tarter Companies are deadlocked regarding QMC issues, and making a demand for the Tarter Companies to commence legal action would be futile.[8] [Record No. 1, ¶¶ 117-18] The

---

[7] The plaintiffs incorrectly assert that "the Complaint need only plausibly allege futility." [Record No 14, p. 9 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008)] "Federal Rule 23.1 of the Federal Rules of Civil Procedure requires that the plaintiff 'allege with particularity' the reasons for failing to make a pre-suit demand." *In re Ferro Corp. Derivative Litig*, 511 F.3d 611, 617 (6th Cir. 2008) (quoting *McCall v. Scott*, 239 F.3d 808, 815 (6th Cir. 2001) (alterations omitted)). *Bassett* does not hold otherwise.

[8] The plaintiffs have not stated who has the authority to cause the Tarter Companies to bring suit. However, their assertions that the Tarter Companies are deadlocked due to ownership percentages, and that the plaintiffs own 50% of the Tarter Companies while the other 50% is owned by Joshua Tarter and his two siblings indicate that such a decision is left to the plaintiffs, Joshua Tarter, and Joshua Tarter's two siblings. [Record No. 1, ¶¶ 17, 118] The plaintiffs' response to the defendants' motions to dismiss confirms that this is their position. [Record No. 14, p. 5-11] Accordingly, the relevant decision-makers are the same for the Tarter LLCs and the Tarter Corporations, and the same futility analysis applies to each of the Tarter Companies.

defendants contend that this allegation insufficiently pleads that making a demand would be futile. [Record No. 8, p. 8-10; Record No. 10, p. 10-15]

The demand futility exception provides that "[w]here it appears that a demand for action would be unavailing or, if granted, would be in unfriendly hands, such a demand is not a condition precedent to the right of stockholders to sue on behalf of a corporation." *Sahni*, 369 S.W.3d at 45 (quoting *Maas v. Tyler*, 316 S.W.2d 211, 213–14 (Ky. 1958)). Kentucky courts have looked to Delaware case law when determining the contours of the demand futility exception. *Id.* at 45-46; *Allied Ready Mix Co. ex rel. Mattingly v. Allen*, 994 S.W.2d 4, 8 (Ky. App. 1998) ("Delaware cases are the leading cases in this subject area and have been followed by other courts. This Court finds them persuasive in the case at bar.").

Delaware law provides that where, as here, the plaintiffs do not challenge any conscious decision of a corporation's board of directors, "the court must determine 'whether or not the particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint is filed, a majority of the board of directors could have properly exercised [their] independent and disinterested business judgment in responding to a demand." *McCall v. Scott*, 239 F.3d 808, 816 (6th Cir. 2001) (quoting *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993)) (alterations added and omitted). "This is often the case when, by asking the board to cause the corporation to enforce its rights, a shareholder would be effectively asking a majority of the board of directors to cause the corporation to *sue themselves*." *Gross v. Adcomm, Inc.*, 478 S.W.3d 396, 402 (Ky. App. 2015) (emphasis in original).

Kentucky courts have presumed that when a member or shareholder seeks bring a derivative action against a defendant that controls at least 50% of the company, a demand on the company to bring suit against the defendant would be futile because the defendant could

unilaterally reject the demand. *See id.* at 402-04; *Sahni*, 369 S.W.3d at 46. The plaintiffs

contend that the Court should apply that presumption in this case. [Record No. 14, p. 6-7]

However, the plaintiffs have not alleged that the defendants control 50% of the Tarter

Companies. The only defendant that allegedly has any ownership interest in the Tarter

Companies is Joshua Tarter, who owns 16.6%. [Record No. 1, ¶ 17] The plaintiffs own 50%,

and the remaining 33.4% is owned by Joshua Tarter's siblings, who are not parties to this

action. [*Id.*] As a 16.6% owner, Joshua Tarter cannot unilaterally reject a demand for the

Tarter Companies to bring suit, and the presumption that such a demand would be futile is not

warranted.

Accordingly, to invoke the demand futility exception, the plaintiffs must plead with

particularity that Joshua Tarter's siblings could not have properly exercised their independent

and disinterested business judgment in responding to a demand on the Tarter Companies to

bring this action. *McCall*, 239 F.3d at 816. The only allegations in the Complaint regarding

Joshua Tarter's siblings are that the plaintiffs asked Joshua Tarter to disclose his relationship

with QMC and turn over the profits made from QMC in their presence, and that they have not

responded to an e-mail the plaintiffs sent to Joshua Tarter making the same requests. [*Id.* ¶¶

46, 116-18] The plaintiffs argue that, because Joshua Tarter's siblings "refused to take any

remedial action against Tarter or Gregory, or even insist honestly and disclose their fraud, it is

plausible these shareholders would not initiate litigation against Tarter and Gregory." [Record

No. 14, p. 8-9] But plausibility is not the standard. Instead, the plaintiff must make

"particularized factual allegations" sufficient to create "a reasonable doubt" that Joshua

Tarter's siblings could not have properly exercised their independent and disinterested

business judgment. *McCall*, 239 F.3d at 816. The fact that Joshua Tarter's siblings did not

respond to the plaintiffs' earlier requests—which were not demands to commence litigation—does not create a "reasonable doubt" regarding whether they would have been able to exercise their independent business judgment in responding to a demand to sue.

In their response to the defendants' motion to dismiss, the plaintiffs suggest that Joshua Tarter's siblings are unable to exercise their disinterested business judgment because of their close personal connection with Joshua Tarter. [Record No. 14, p. 10 ("[Joshua Tarter's] siblings, obviously in a difficult personal position, simply refused to engage in addressing or resolving these issues.")] The plaintiffs also suggest that if Joshua Tarter's siblings were to join this litigation, it could place control of the litigation in "unfriendly hands" because if Joshua Tarter is found liable he may be forced to tender his stock to the Tarter Companies as restitution, and as a result Joshua Tarter and his siblings would no longer control 50% of the Tarter Companies. [Record No. 14, p. 10-11]

As an initial matter, the plaintiffs failed to make these assertions in their Complaint, and may not amend their Complaint by embellishing their factual allegations in their subsequent briefs. *Brown v. Accenture Fed. Servs.*, 2016 WL 3298543, at *5 (E.D. Ky. June 13, 2016) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Further, even the assertions in the plaintiffs' response fail to sufficiently allege that Joshua Tarter's siblings could not have exercised their independent business judgment in responding to a demand to sue. Under Delaware law, a director is considered "interested" if he or she: (i) received a personal financial benefit that was not shared by the other stockholders from the challenged conduct; (ii) might suffer a "materially detrimental impact" from the proposed legal action; or (iii) was incapable, due to domination and control, of objectively evaluating a

demand to assert the company's claims. *Id.*; *see also White v. Lunsford*, 2005-CA-1775, 2006 WL 2787469, *5 (Ky. App. Sept. 26, 2006) (quoting *Rales*, 634 A.2d at 936).

The plaintiffs do not allege that Joshua Tarter's siblings received a personal financial benefit from the conduct at issue. In fact, they expressly assert that Joshua Tarter's siblings did not profit from the scheme. [Record No. 14, p. 22 ("[W]hen Tarter devised his scheme to embezzle millions of dollars from the family business, he did not choose his siblings to enjoy the fruits of the fraud, but rather chose Gregory and Chen.")] Also, the plaintiffs have not indicated that Joshua Tarter's siblings "would have been unwilling to act on behalf of the company because they would have been subject to a 'substantial likelihood' of liability stemming from legal action." *White*, 2006 WL 2787469, *6. Although it is true that if Joshua Tarter was forced to give up his ownership interest he and his siblings would no longer control 50% of the Tarter Companies, this same thing can be said of any two owners of the Tarter Companies. The plaintiffs have pled no facts indicating that the desire to maintain control of 50% of the Tarter Companies together with Joshua Tarter would undermine Joshua Tarter's siblings' independent judgment. [Record No. 1, ¶ 17]

Finally, although personal relationships may sometimes undermine a director's independence, "the plaintiff must allege specific facts that would demonstrate that the challenged directors were controlled by the offending directors through personal or other relationships." *White*, 2006 WL 2787469, *6 (citing *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984). A conclusory allegation that a director cannot be independent due to a personal relationship, without more, is not sufficient. *Mayer v. Adams*, 167 A.2d 729, 732 (Del. Ch. 1961). The plaintiffs have provided no more than a conclusory allegation that the personal relationship between Joshua Tarter and his siblings would undermine the siblings'

independence, especially given that Joshua Tarter's siblings are related to all of the owners of the Tarter Companies, and not just Joshua Tarter. [Record No. 1, ¶ 17]

In short, the plaintiffs have failed to adequately plead that making a demand on the Tarter Companies to bring this action would have been futile. As a result, they have failed to satisfy the statutory prerequisites to bring a derivative action on the Tarter Companies' behalf, and their derivative capacity claims will be dismissed for lack of standing. Fed. R. Civ. P. 23.1(b)(3); KRS 271B.7-400; KRS 275.337(2).

## V.

The plaintiffs lack standing to bring this action in their individual capacities because they have not alleged that they suffered any injury that is separate and distinct from the injury sustained by the Tarter Corporations. Further, they lack standing to bring this action in their derivative capacities because they have failed to adequately plead that they demanded the Tarter Companies to sue on its own behalf or that such a demand would have been futile. As a result, the Court lacks jurisdiction to decide the plaintiff's claims.[9] Accordingly, it is hereby

**ORDERED** as follows:

1.      The defendants' motions to dismiss [Record Nos. 8, 10] are **GRANTED**.

2.      The claims asserted by the plaintiffs against Defendants Joshua Tarter, Donald Tarter and Thomas Gregory are **DISMISSED**, in their entirety, without prejudice.[10]

---

[9] Because the Court finds that it lacks jurisdiction over this matter, it need not address the defendants' alternative arguments to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Edwards v. Walter Jones Constr.*, 98-4366, 2000 WL 302710, *1 (6th Cir. 2000).

[10] A final and appealable judgment will be entered upon resolution of claims asserted against Defendant Hong Kong QMC Industry Co. On January 17, 2018, an entry of default was entered by the Clerk of the Court against this defendant [Record No. 25] but a Default Judgment has not been sought or entered as of this date.

This 22nd day of January, 2018.



Signed By:

*Danny C. Reeves* DCR

**United States District Judge**